KLEIN *et al. v.* WILLIAMS.

(Division A.  March 22, 1943.)

[12 So. (2d) 421.  No. 35296.]

Jacobson, **Snow** & **Covington**, of Meridian, for appellant.

**W. F. Latham**, of Quitman, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Milton Williams, a minor ten years of age, by M. D. Williams, his father and next friend, sued Stonewall Cotton Mills and Doctors K. T. Klein and R. P. Walker for breach of a contract for medical care and recovered a judgment against Doctors Klein and Walker for $500, from which they appeal. The lower court, on motion made when plaintiff rested his case, excluded the testimony offered by plaintiff and directed a verdict for the Cotton Mills, but overruled the motion as to Doctors Klein and Walker. Williams did not appeal as to the Cotton Mill; therefore, the appellants are Doctors Klein and Walker.

The main contentions on this appeal are (1) that appellee had not brought himself within the benefits of the contract, but, if so, (2) he suffered no damage.

The medical contract was signed by the Cotton Mill and Doctor Klein. It was for the mutual benefit of the signers and the employees of the mill at Stonewall, Missis-

sippi. Doctor Klein resides at Meridian, Mississippi, and there operates the Meridian Sanitarium. The employees, on availing themselves of the contract, became entitled without further charge, to medical services and advice of Doctor Klein and his associate and to hospitalization at the Meridian Sanitarium for one-half the regular charges. Doctor Klein also contracted to engage a competent doctor and nurse, subject to the approval of the Cotton Mill, to be stationed at Stonewall to serve eligible employees there. The Cotton Mill agreed to furnish quarters for the local doctor and nurse and to collect from the employees and remit to Doctor Klein the fees now to be stated. Any employee of the Mill could avail of this contract for himself and any or all members of his family by notifying the Cotton Mill of such desire and agreeing to a deduction from the wages of such employee of thirty cents per month per person. There are other provisions of the contract not necessary to be stated. Doctor Klein made an arrangement with Doctor Walker to act as the local doctor.

On September 7, 1940, appellee was struck by an automobile at Stonewall, causing a fracture of the thigh bone of his right leg. He was immediately carried to the office of Doctor Walker, who examined his injury and prepared and bandaged onto the leg a padded splint. Doctor Walker informed the father of appellee that Milton should be taken immediately to the Sanitarium at Meridian. This was done by automobile. Doctor Walker had in his office a card index system showing the names of employees on the doctor's list. Neither Milton nor his father appeared on the list in the doctor's office. He so informed the father. The father testified he told Doctor Walker he had given notice and they should be on the list. Doctor Walker made no further effort to ascertain whether appellee was entitled to be on the doctor's list. His office was about one hundred yards from that of the Cotton Mill. Doctor Walker wrote a note to Doctor Klein

telling him appellee was not on the list. The father carried this note to Doctor Klein.

When the patient arrived at the Meridian Sanitarium X-Rays were made of his injury. Doctor Klein told the father what Doctor Walker had written. The father says he informed Doctor Klein that appellee should have been on the doctor's list. The father and Doctor Klein discussed what the charges would be if Milton remained at the Sanitarium. An amount was named and the father says he told Doctor Klein he thought he could pay it out of his weekly wages. There was then a discussion of the advisability, under the conditions, of taking the child to the Matty Hersee Charity Hospital in Meridian. Doctor Klein told the father he thought he could arrange it. This was done. Milton was then again placed in an automobile on pillows, his mother and father being in the car with him, and was carried from the Meridian Sanitarium to the Matty Hersee Charity Hospital. He remained in the hospital approximately three weeks and there is no dispute that he received very splendid treatment at the Charity Hospital and his recovery was most satisfactory. It should be added that Doctor Walker made a charge of $2 for his services and sometime later the father of appellee paid one-half of this amount, the other half being paid by the owner of the automobile which struck Milton, and who had also furnished the automobile for the trip to Meridian.

Dealing now with the first contention of appellants, the contract prescribes two conditions to become eligible for benefits thereunder, to-wit: The status of an employee of the Cotton Mill at Stonewall and notice by such employee to the Mill of his desire and willingness to avail of the benefits of this arrangement. No particular kind of notice is prescribed. M. D. Williams and his wife testified that he had informed the local nurse and Doctor Walker of his desire to come within the contract for himself and the other four members of his family, including Milton. The nurse and Doctor Walker deny that. M. D.

Williams also testified that he had informed an employee in the office of the Cotton Mill to that effect. The employee did not deny definitely that Williams had given him such notice. No question is raised as to the authority of this employee to receive the notice. These notices, if given, were oral and prior to the accident. It appears that M. D. Williams had worked at this Mill a number of years, during which time he and the members of his family had been on the doctor's list, but he quit work in July, 1940. He began working again the latter part of August, 1940. It was the practice at the Mill, owing to the large number of employees, some twelve hundred to three thousand, to pay the employees about one week after the end of the week covered by such payment. It took that long to make up the payrolls. In other words, the wages due September 7th, the day Milton was injured, were not paid until September 13th. On that day M. D. Williams received his wages for his work which ended September 7th. The Mill had deducted $1.50 for the medical services under this contract, this being thirty cents per month for each member of his family. The representative of the Mill testified the deduction would not have been made had the notice not been received. It was made for the week prior to the accident. The method of notice by the Mill to Doctor Walker of those on the eligible list was a matter between them. It is not a question whether appellee was on the list but whether he had a right to be on it. And if notice had been given before the accident he had that right. This question was submitted to the jury under proper instructions and the jury found the notice had been given and appellee was eligible. We think there is sufficient evidence to support that finding.

Appellants say that by paying the $1.00 to Doctor Walker and negotiating with Doctor Klein about his hospital charges appellee is estopped to say he is eligible. We do not think so. Aside from whether the father by such negotiations could have estopped appellee, a minor,

the father also testified that he informed Doctor Walker and Doctor Klein that, while his name might not be on the list, it ought to be there and that he had so requested.

On the question of damages, it follows from what we have said that the doctors violated the contract and appellee would be entitled to at least nominal damage. It is not claimed in the declaration that the contract required anything to be done for appellee other than was actually done for him to the time he left the Sanitarium. Instead of remaining at the Meridian Sanitarium he went to the Charity Hospital. Had he remained at the Meridian Sanitarium under the contract the father would have had to pay one-half the regular hospital charges. Nothing was paid to the Charity Hospital or for medical treatment there. It is claimed that appellee was benefited—that he saved the charges at the Meridian Sanitarium. This confuses, however, the obligations and rights of the father with those of the appellee. In addition to the nominal damages the only other damage which the minor himself suffered by the failure of Doctor Klein to take him into and treat him at the Meridian Sanitarium was the pain and suffering which appellee sustained by virtue of his being carried from the Sanitarium to the Charity Hospital over and above what he would have sustained had he been kept at the Meridian Sanitarium. This damage, if any, has not been ascertained and we can not determine it here. The question was not so limited on the trial below. The case is affirmed as to liability but reversed and remanded for assessment of damages only.

So ordered.